UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BONNIE JEAN HEBERT,

        Plaintiff,

v.                                    Case No. 8:21-cv-295-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed legal standards, the Commissioner's decision is affirmed.

## I.

### A.    Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 267-68).  The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 142, 147).  Plaintiff then requested an administrative

---

[1]  Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter.  No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

hearing (Tr. 155).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 26-60).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-19).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1979, claimed disability beginning December 1, 2017, which she later amended to January 1, 2017 (Tr. 10, 50, 126-27).  Plaintiff obtained a high school equivalent education (GED) (Tr. 32, 295).  Plaintiff's past relevant work experience included work as an administrative office clerk, cashier-checker, photo lab supervisor, and cashier supervisor (Tr. 17, 52, 296).  Plaintiff alleged disability due to fibromyalgia, arthritis, bursitis, migraines, depression, anxiety, PTSD, laminectomy, muscle spasms, and high blood pressure (Tr. 127, 294).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since January 1, 2017, the amended alleged onset date (Tr. 12).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative joint disease of the bilateral hips, degenerative disc disease of the

lumbar spine status-post laminectomy, fibromyalgia, thrombophlebitis, and obesity (Tr. 12).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).   The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> option to stand for 10 minutes after every 1 hour of sitting as long as not off task or away from the workstation. No climbing ladders, ropes, or scaffolds, but could occasionally climb ramps/stairs, stoop, crawl, and crouch as well as frequently kneel and balance. The claimant could occasionally push/pull with the bilateral upper extremities, frequently reach with the non-dominant left upper extremity, and occasionally push/pull with the bilateral lower extremities. The claimant should not work at unprotected heights, but may have occasional exposure to extreme heat and humidity

 (Tr. 14-15).   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 14-17).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work (Tr. 17-18).   Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an order clerk, tube operator, and document preparer (Tr. 18).

Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 19).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the Social Security Administration ("SSA") promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4).  If

the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260

(citation omitted).  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by failing to (1) properly evaluate Plaintiff's subjective complaints, (2) account for Plaintiff's absenteeism in the hypothetical question to the VE, and (3) find Plaintiff disabled under Listing 1.04. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.    Plaintiff's Subjective Complaints

First, Plaintiff contends the ALJ erred in evaluating Plaintiff's subjective complaints of pain.  Plaintiff argues that "[t]he complete record shows terrible pain and consistent efforts by [Plaintiff] to cure it[,]" and that the ALJ's decision is not supported by substantial evidence (Doc. 35 at 15).  The Commissioner argues that substantial evidence does support the ALJ's determination, and that "medical records and other evidence, as discussed by the ALJ, do not indicate that Plaintiff's condition was as limiting as she alleged" (Doc. 36 at 8-9).[2]

---

[2] The Commissioner states "[t]his case involves a very limited 31-day period of eligibility[,]" relying on the initial onset date of December 1, 2017 (Doc. 36 at 1).  However, at the hearing before the ALJ, Plaintiff amended the onset date to January 1, 2017 (Tr. 50). Thus, the relevant period commences on the amended onset date of January 1, 2017.

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  "Once a claimant establishes that his pain or other subjective symptoms are disabling, 'all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability.'"  *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021)[3] (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints.  The standard requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications, and (5) treatment or measures taken by the

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).   If an ALJ rejects a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).[4]

The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings.  20 C.F.R. § 404.1529(c)(2).  "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received.  *See* 20 C.F.R.  § 404.1529(c)(3).   In the end, subjective complaint evaluations are the province of the ALJ.  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision

(Tr. 15).  This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence.  *See Danan v. Colvin*, No. 8:12-

---

[4] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms.  The SSA eliminated the use of the term "credibility" from its sub-regulatory policy, as the regulations do not use this term.  SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017).  This change "clarif[ied] that the subjective symptom evaluation is not an examination of an individual's character." *Id*.

cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013).  And here, the ALJ's conclusion is supported by substantial evidence.

The ALJ acknowledged Plaintiff's history of degenerative disc disease of the lumbar spine, and degenerative joint disease of the bilateral hips, and considered medical evidence from the relevant period, but concluded Plaintiff was "not as limited as alleged" (Tr. 15).  The ALJ considered treatment notes from the Watson Clinic.  On January 16, 2017, Ann Winny, M.D., evaluated Plaintiff and reported Plaintiff was walking about 4,000 steps per day (Tr. 505).    While physical examination revealed "some discomfort with movement of the right hip" and tenderness of the cervical and lumbar spine, cervical and lumbar spine x-rays were normal (Tr. 15, 505-06).  On April 14, 2017, Plaintiff was evaluated for bilateral hip pain (Tr. 485).  She was noted to have tenderness in the greater trochanter in both hips, but normal range of motion (Tr. 488).  On July 18, 2017, Plaintiff was again seen for complaints of hip pain (Tr. 16, 448).  Contemporaneous medical notes indicate the pain was moderate and a result of a long walk (Tr. 16, 448).  Range of motion was again normal in both hips (Tr. 16, 451).  On August 4, 2017, Plaintiff returned to the Watson Clinic for a follow-up visit (Tr. 442).  She reported "need[ing] a cane or wheelchair when trying to shop or go to the grocery store because she cannot stand or walk for any length of time without pain" (Tr. 442). The ALJ considered this statement and noted that it was inconsistent with Plaintiff's July 2017 complaint of hip pain caused by a long walk (Tr. 15-16).

The ALJ considered X-ray imaging of the pelvis from September 27, 2017, indicating mild degenerative changes of the bony pelvis (Tr. 16, 577). Contemporaneous imaging of the lumbar spine revealed moderate degenerative changes, with "vacuum phenomenon within the L5/S1 disc space which indicated disc degeneration" (Tr. 16, 578). Plaintiff argues that "[a]lthough the ALJ notes these later studies, there is no effort to reconcile these with the January studies, and it appears that the decision would accept the January 2017 findings to discount Ms. Herbert's complaints" (Doc. 35 at 13). Plaintiff is merely speculating that the ALJ relied on the January 2017 normal X-ray of the lumbar spine, and discounted these later radiology studies. However, the ALJ specifically noted "[i]maging of the lumbar spine performed in September 2017 revealed moderate degenerative changes of the lumbar spine with vacuum phenomenon" and later acknowledged that "objective medical evidence showed degenerative changes in the lumbar spine and bilateral hips" restricting Plaintiff to sedentary exertional work with additional limitations (*see* Tr. 16). Thus, Plaintiff's argument as to the ALJ's consideration of the January 2017 and September 2017 radiology studies is without merit.

In October of 2017, Plaintiff underwent laminectomy surgery (Tr. 16, 589-91, 595-97). The ALJ noted that "[o]n examination in January 2018, the claimant had moderate decreased range of motion due to pain, but no redness, swelling, or deformity" and that "she exhibited normal gait and full range of motion to upper and lower extremities" (Tr. 16, 433).

In addition to Plaintiff's spine impairments, the ALJ considered Plaintiff's history of fibromyalgia (Tr. 16).  The ALJ noted that on January 16, 2017, physical examination revealed multiple fibromyalgia tender points and was assessed with fibromyalgia with worsening pain of unknown etiology (Tr. 16, 506).  The ALJ found that "[s]ubsequent treatment summaries show the claimant was treated with chronic pain medication" (Tr. 16, 495).

The ALJ also considered Plaintiff's "history of thrombophlebitis in the left upper extremity" (Tr. 16).  The ALJ noted that in June of 2017, Plaintiff "presented with left arm pain and upon evaluation, a venous ultrasound revealed occluding thrombus from the upper arm to wrist in the cephalic vein" (Tr. 16, 461, 464-65, 526).  On August 4, 2017, at a follow-up appointment, Plaintiff denied pain, swelling or redness (Tr. 16, 442).  A venous ultrasound of the left arm on August 17, 2017, was normal, confirming resolution of Plaintiff's thrombophlebitis complaints (Tr. 16, 524).  This result was further confirmed by a follow-up venous ultrasound of the left arm on October 2, 2017, which was also normal (Tr. 436, 522-23).

To the extent Plaintiff disagrees with the ALJ's RFC finding, the ALJ considered all of this evidence, as well as Plaintiff's subjective complaints to the extent they were consistent with the evidence, and crafted an RFC that adequately reflected Plaintiff's limitations.  Indeed, the ALJ did account for Plaintiff's complaints of back and hip pain.  Considering the objective medical evidence showing degenerative changes in the lumbar spine and bilateral hips and the

October 2017 laminectomy surgery, the ALJ restricted Plaintiff "to sedentary exertional work with an option to alternate sitting and standing" (Tr. 15). Additionally, the ALJ stated:

> In further consideration of the claimant's back surgery, obesity, fibromyalgia, and bilateral hip pain, the claimant should not climb ladders, ropes, or scaffolds nor work at unprotected heights. As a safety precaution, the claimant is limited to occasional climbing ramps/stairs, stooping, crawling, and crouching. Due to the limited impact on the back and hips, the claimant is limited to frequent kneeling and balancing. In consideration of the claimant's history of thrombophlebitis affecting the upper extremity, the claimant is limited to occasional pushing/pulling with the bilateral upper extremities and frequent reaching with the non-dominant left upper extremity. In consideration of radicular pain affecting the lower extremities, the claimant is limited to occasional pushing/pulling with the bilateral lower extremities. The undersigned further limits the claimant's exposure to extreme heat and humidity due to the claimant's history of fatigue and high blood pressure

(Tr. 15-16).

In sum, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard. *See Holt*, 921 F.2d at 1221. As contemplated by the regulations, the ALJ considered objective medical evidence and treatment history and articulated specific and adequate reasons for finding Plaintiff's subjective complaints not entirely consistent with the evidence. *See, e.g.*, *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014) (finding the ALJ's discussion of objective medical evidence of record provided "adequate reasons" for the decision to partially discredit the claimant's subjective complaints). To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are

supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Foote,* 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.") (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).  On this record, the ALJ did not err in considering Plaintiff's subjective complaints.[5]

### B.    VE Testimony

Next, Plaintiff contends the ALJ's hypothetical question to the VE did not reflect Plaintiff's "absenteeism due to surgery, medical appointments and treatment," which, according to Plaintiff would preclude substantial gainful employment (Doc. 35 at 15-17).  The Commissioner argues that the hypothetical question accurately conveyed the ALJ's RFC finding, and as such, is supported by substantial evidence (Doc. 36 at 13).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel*, 631 F.3d at 1180.  To make this determination, an ALJ may obtain the testimony of a vocational expert. *Id.*  For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question

---

[5] To reiterate, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*  In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth*, 703 F.2d at 1239.

which comprises all of the claimant's impairments." *Id.* (citing *Wilson*, 284 F.3d at 1227).  "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1180).

In this case, the ALJ posed a hypothetical question to the VE that accurately reflected Plaintiff's RFC and vocational profile (Tr. 52-55).  In response to this hypothetical, the VE testified that Plaintiff could perform unskilled sedentary jobs existing in significant numbers nationally, such as order clerk, tube operator, and document preparer (Tr. 18, 54).  When asked by Plaintiff's counsel to account for absenteeism in the hypothetical, the VE testified that an individual can be absent a maximum of two days a month, but "[a]fter that employment is unlikely to be sustained" (Tr. 57).  In support of her argument that absenteeism would preclude "substantial gainful employment[,]" Plaintiff lists medical appointments during the relevant time, including two surgeries and post operative assessments, and an emergency room visit, asking the Court to presume the frequency of her medical appointments and procedures would remain constant over time, and that each appointment would require her to miss an entire work day (Doc. 35 at 15-17).  However, Plaintiff cites no evidence in the record demonstrating that her appointments are of such duration that she would miss an entire work day or that these appointments could not be scheduled outside of the workday in order to avoid excessive absenteeism.  *See, e.g., Martinez v. Kijakazi*, No. 8:20-cv-1025-TPB-AEP,

2021 WL 4482616, at *10 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021) ("Plaintiff has not demonstrated that her purported absenteeism would prevent her from scheduling her appointments outside of working hours for a regular or equivalent work schedule."); *Campbell v. Colvin*, No. 14 Civ. 5385 KPF, 2015 WL 5311239, at *11, n.13 (S.D.N.Y. Sept. 11, 2015) (stating that while the plaintiff "had numerous medical procedures and doctors visits, no evidence has been presented to show that such interruptions preclude his keeping a generally normal schedule").  Indeed, medical notes from September 27, 2017, show office visit to have been 20 minutes, while one of the listed post operative appointments on October 12, 2017, indicated total time in room was 25 minutes, with counseling and/or coordination of care noted to be 15 minutes (Tr. 584, 599).

Plaintiff further argues that "[e]ven assuming that the appointments did not take an entire workday, this type of absenteeism does not make room for sick days when Ms. Hebert would not have been able to go to work" (Doc. 35 at 17). However, as discussed above, the ALJ considered Plaintiff's subjective complaints and reasonably concluded that they were not entirely consistent with the medical evidence (Tr. 15).  Accordingly, the ALJ did not err in failing to account for Plaintiff's claim of absenteeism due to "sick days" into the evaluation of her ability to do work.  *See Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) ("The ALJ is not required to include findings in a hypothetical to a vocational expert that the ALJ has found to be unsupported.").

Ultimately, the ALJ's hypothetical question properly incorporated Plaintiff's RFC and assumed only those limitations which the ALJ found were consistent with the record, and that finding is supported by substantial evidence.

### C.    Listing 1.04

Finally, Plaintiff challenges the ALJ's step three finding that Plaintiff's spine disorder did not meet the requirements of Listing 1.04.   Plaintiff argues that radiology studies of the lumbar spine on September 27, 2017, confirmed nerve root compression, and that "[t]here was also positive leg raising on examination on September 27, 2017[,]" as required by Listing 1.04 (Doc. 35 at 18-19).   Relying on a 31-day relevancy period, the Commissioner argues Plaintiff failed to establish that her spine disorder met the requirements of Listing 1.04, specifically evidence of a nerve root compression (Doc. 36 at 15).

At step three of the sequential evaluation process, the ALJ determines if a claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. The Listing of Impairments ("Listings") describes conditions that are severe enough to prevent a person from performing any gainful activity.   *See* 20 C.F.R. § 404.1525(a); *Wilson*, 284 F.3d at 1224.   Thus, a claimant meets his burden of

proving disability if he establishes that his impairments meet[6] or equal[7] an impairment in the Listings. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The burden is on the claimant to demonstrate that his condition meets (or equals) a listed impairment. *See Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).

Listing 1.04 outlines the requirements to establish whether a presumptive disability exists in an individual with a disorder of the spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Listing 1.04 can be satisfied three ways, as set forth in subsections A-C. All three subsections require that the claimant first establish that he has a disorder of the spine, "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Subsection A requires additional proof that the claimant establish:

> [1] [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain,
> [2] limitation of motion of the spine,
> [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and,
> [4] if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

---

[6] "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1525(a)-(d) (2015)).

[7] "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Subsection B requires additional proof of "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04B. And Subsection C requires additional proof of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C.

In the instant case, the ALJ indicated there is no evidence to suggest the existence of spinal arachnoiditis or pseudoclaudication, and while Plaintiff alleged generally in her brief that she meets the criteria for Listing 1.04, she only addressed subsection A and did not argue that she meets subsections B or C (Tr. 14, Doc. 35 at 18-19). Accordingly, the Court limits its discussion to whether Plaintiff's spine disorder met the requirements of Listing 1.04A only.

At step two of the sequential evaluation process, the ALJ found that Plaintiff's severe impairments included degenerative disc disease of the lumbar spine status-post laminectomy (Tr. 12). While this finding satisfies the initial criteria of Listing 1.04 which requires proof of a disorder of the spine, the ALJ noted "the evidence of record does not demonstrate nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss

accompanied by sensory or reflex loss and positive straight-leg raising" (Tr. 14). In so finding, the ALJ acknowledged that "the record contains some evidence of radiculopathy and limitation of motion of the spine" (Tr. 14). However, the ALJ found "the evidence demonstrates negative straight leg raises, bilaterally and denies focal weakness, numbness, and tingling" (Tr. 14).

In support of her contention that she does meet the requirements of Listing 1.04A, Plaintiff cites to an MRI and X-ray imaging of the lumbar spine, revealing moderate degenerative disc changes, loss of height and vacuum phenomenon within the L5/S1 disc space, and spinal canal narrowing at L4/L5 and L5/S1 (Doc. 35 at 18-19, Tr. 578, 580). Plaintiff also refers to an October 5, 2017 post operative assessment noting Plaintiff had "S1 left distribution with pain in the low back, left buttock, and left posterior thigh[,]" documented in the MRI (Tr. 594). And, as the ALJ discussed, the record does contain evidence of radiculopathy, which may be indicative of nerve root compression (Tr. 14, 584). S*ee, e.g.*, *Partipilo v. Berryhill*, No. 3:17-cv-549-MCR-CJK, 2018 WL 4518985, at *7 (N.D. Fla. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 4518325 (N.D. Fla. Sept. 20, 2018) ("the record contains diagnoses of lumbar radiculopathy . . . which can be evidence of nerve root compression"). Furthermore, the ALJ acknowledged that the record contains some evidence of limitation of motion of the spine (Tr. 14). Nonetheless, Plaintiff's argument fails because she does not meet the additional requirements of Listing 1.04A, namely motor loss accompanied by sensory or reflex loss and positive straight-leg raising tests.

First, Plaintiff failed to produce evidence that she suffered from motor loss accompanied by sensory or reflex loss, as required to prove disability under Listing 1.04A.  Indeed, as the ALJ noted, "the evidence of record does not demonstrate . . . motor loss accompanied by sensory or reflex loss" and "denies focal weakness, numbness, and tingling" (Tr. 14).  On April 28, 2017, a neurological review of systems revealed Plaintiff was negative for tingling, weakness, numbness, and paresthesias (Tr. 482).  On June 7, 2017, a neurological physical examination indicated Plaintiff had normal reflexes and no cranial nerve deficit (Tr. 470).  Similarly, on June 20, 2017, neurological physical examination showed "no motor or sensory deficit" (Tr. 465).  And on January 5, 2018, post lumbar laminectomy surgery, Plaintiff had no step-offs, crepitus, or tenderness noted on palpation of spine, and no focal weakness, numbness, tingling, or focal deficit (Tr. 430, 433).  Thus, Plaintiff has failed to demonstrate the requisite motor loss accompanied by sensory or reflex loss.  *See Cooper v. Comm'r of Soc. Sec.*, No. 6:18-cv-1352-ORL-37LRH, 2019 WL 3097541, at *5 (M.D. Fla. June 28, 2019), *report and recommendation adopted*, 2019 WL 3082950 (M.D. Fla. July 15, 2019) (finding the plaintiff did not have motor loss accompanied by sensory or reflex loss, and therefore did not meet the criteria of Listing 1.04A, where the record showed no focal deficits, sensory intact, no motor deficit, and intact sensation).

Plaintiff has also failed to demonstrate evidence of positive sitting and supine straight-leg raising tests, another requirement of Listing 1.04A.  Bilateral straight-leg raising tests were negative on April 14, 2017, and July 18, 2017 (Tr. 451, 488).

And while Plaintiff points to a positive leg-raising test on September 27, 2017 (Doc. 35 at 19, Tr. 573), the positive straight-leg raise was in the lying position only and negative in the sitting position (Tr. 573).  Listing 1.04A requires a positive straight-leg raising test for both sitting and supine positions.  *See Torres v. Comm'r of Soc. Sec.*, 408 F. Supp. 3d 201, 202 (E.D.N.Y. 2019) ("Notably, evidence of both positions is required in order to support a finding of whether Plaintiff's impairment meets or equals Listing 1.04.") (citing *Sullivan*, 493 U.S. at  530); *see also Cooper*, 2019 WL 3097541, at *5 (stating that a claimant must demonstrate positive straight-leg raise tests in both sitting and supine positions in order to meet Listing 1.04A);  *Miller v. Astrue*, No. 2:09-cv-650-FTM-DNF, 2011 WL 1598731, at *5 (M.D. Fla. Apr. 28, 2011) (finding the plaintiff did not meet the requirements of Listing 1.04A where he had positive straight-leg raising on the right in the supine position and negative straight-leg raising bilaterally in the sitting position).

Thus, Plaintiff has failed to satisfy all of the criteria for Listing 1.04A.  Even assuming that the evidence sufficiently demonstrates nerve root compression characterized by neuro-anatomic distribution of pain and limitation of motion of the spine, Plaintiff has not demonstrated motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and positive straight-leg raising testing in both the sitting and supine positions.  Accordingly, the Court finds Plaintiff has not met her burden showing her condition meets Listing 1.04A.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of September, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record